UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALLA PASTERNACK,
Executrix of the Estate
of Leon Frenkel,

        Plaintiff,

v.                                Case No. 8:16-cv-482-T-33CPT

BRUCE K. KLEIN, individually,
and in all other employee, owner,
member, corporate and agent capacities
as regards his various business
entities, and OZEAN PARTNERS, LLC,

        Defendants.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This cause comes before the Court pursuant to a bench trial held on May 29 and May 30, 2018. The parties filed their proposed findings of fact and conclusions of law on July 30, 2018. (Doc. ## 117, 118). Additionally, on August 10, 2018, Plaintiff Alla Pasternack filed a reply to Defendants Bruce Klein and Ozean Partners, LLC's proposed findings of fact and conclusions of law with the Court's leave. (Doc. # 123). Later, the Court ordered supplemental briefing, (Doc. # 128), and the parties filed their briefs on November 15, 2018. (Doc. ## 131, 132).

1

Having considered the evidence and applicable law, the Court grants judgment in favor of Pasternack and against Ozean Partners and Klein.

## I.    Background and Procedural History

On February 29, 2016, Plaintiff Leon Frenkel initiated this action, alleging Klein and Ozean Partners violated Florida's Uniform Fraudulent Transfer Act ("FUFTA"). (Doc. # 1). The challenged transaction is the September 19, 2015, transfer of a condominium located in Longboat Key, Florida, from Klein's former wife, Elise Gieger, to Ozean Partners. Frenkel claimed the transfer was fraudulent because Klein was entitled to the Longboat Key property, but instead instructed Gieger to transfer the property to Ozean Partners to shield it from Klein's creditors. (Doc. # 91 at 2-3). Klein and Ozean Partners contend the transfer was not fraudulent and the Longboat Key property is Klein's homestead. (Id. at 4-5).

This action is not the only lawsuit between Frenkel and Klein. Specifically, in the United States District Court for the Eastern District of Pennsylvania, Frenkel had previously sued Klein and Klein's company, Victory Partners, LLC, for breach of contract and to pierce the corporate veil. (Id. at 5). Frenkel's FUFTA claims in this action are directly related

to the underlying facts and issues in the Pennsylvania action. (Doc. # 38). Therefore, on November 15, 2016, this case was stayed pending the outcome of the Pennsylvania action. (Id.). While this case was stayed, Frenkel died on March 4, 2017, so his daughter and executrix of his estate, Pasternack, substituted herself as plaintiff in both the Pennsylvania action and this action. (Doc. # 43; Doc. # 114-1 at 12). After the Pennsylvania court entered judgment against Klein and Victory Partners, the stay was lifted in this action on August 22, 2017. (Doc. # 48).

The parties filed cross motions for summary judgment, (Doc. ## 67, 68), which the Court denied on March 22, 2018. (Doc. # 86). Thereafter, this case proceeded to a bench trial to determine: (1) whether the Longboat Key property was Klein's homestead, and (2) whether the transfer of the Longboat Key property from Gieger to Ozean Partners constituted a fraudulent transfer under FUFTA. At trial, over seventy exhibits were entered and multiple witnesses testified, including Klein; Alejo Abreu, the condominium complex's maintenance supervisor; Kim Giaccardo, the condominium complex's community manager; and William West, a friend of Klein's and resident of the condominium complex. At

the close of Pasternack's case, Pasternack moved for directed verdict, and the Court reserved ruling.

The Court has carefully considered the evidence and testimony presented at trial, the arguments of counsel, the parties' briefs, and the governing law. The Court now makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## II. **Findings of Fact**

The Court makes the following findings of fact. To the extent that any findings of fact might constitute conclusions of law, they are adopted as such.

### A. **The Pennsylvania Action**

In 2010, Frenkel agreed to lend $153,000 to Victory Partners, with Klein to serve as an individual guarantor on the note. (Doc. # 91 at 5). Later, Frenkel agreed to lend another $25,000 to Klein individually. (Id.). Klein and Victory Partners subsequently defaulted on these loans. (Doc. # 113-5 at 3). Consequently, on April 18, 2014, Frenkel initiated the Pennsylvania lawsuit for breach of contract and to pierce the corporate veil. (Doc. # 91 at 5). On August 11, 2014, after Klein and Victory Partners failed to appear, the Pennsylvania court entered default judgment in favor of

Frenkel and against Klein and Victory Partners. (Id. at 6).

On October 30, 2015, shortly after the transfer of the Longboat Key property from Gieger to Ozean Partners, Klein and Victory Partners made their first appearance in the Pennsylvania action and moved to set aside the default judgment, arguing they were never properly served. (Doc. # 114-1 at 8, 18). After an evidentiary hearing on whether service was proper, the Pennsylvania court set aside the default judgment on March 21, 2016. (Id. at 10, 18). Frenkel had filed a notice of lis pendens on the Longboat Key property on March 1, 2016, (Doc. # 6), which was discharged on April 11, 2016, after the Pennsylvania default judgment was set aside. (Doc. # 15).

The parties eventually settled as to multiple claims, but Klein failed to tender the settlement payment until the Pennsylvania court imposed sanctions. (Doc. # 113-4). On July 24, 2017, following a bench trial on the remaining claims, the Pennsylvania court entered judgment against Klein and Victory Partners for $318,744.01, with $62.88 in post-judgment interest per day, beginning on July 25, 2017, and continuing until judgment is paid. (Doc. # 113-5 at 1). Klein appealed the Pennsylvania court's decision, but the judgment

was affirmed by the Third Circuit Court of Appeals. (Doc. ## 126, 127).

**B.** **Transfer of the Longboat Key Property From Gieger to Ozean Partners**

On March 9, 2015, Klein and Gieger finalized their divorce in New Jersey state court and entered a matrimonial settlement agreement. (Doc. # 112-7). Among other things, the agreement stated that Gieger agreed to transfer title of the Longboat Key property to Klein. (Doc. # 113-1). Gieger had obtained the Longboat Key property in May of 2004. (Doc. # 112-1). Additionally, Gieger had executed two mortgages on the Longboat Key property, both of which stated the property was not Gieger's homestead. (Doc. # 112-2; Doc. # 112-4). According to the matrimonial settlement agreement, the property's fair market value was $550,000. (Doc. # 113-1 at ¶ 17).

Yet, on September 19, 2015, for $10.00 "and other good and valuable considerations," Gieger transferred the Longboat Key property to Ozean Partners. (Doc. # 112-13). At trial, Klein testified that Gieger received a nominal $10.00 for the transaction. (Doc. # 115 at 164:9-12). Ozean Partners had been formed on August 10, 2015 — a little over a month before the transfer — with Klein as its sole managing member. (Doc.

# 91 at 6; Doc. # 112-9). Ozean Partners did not last long, though, as it was administratively dissolved on September 23, 2016, by the State of Florida for failing to file its mandatory annual reports. (Doc. # 112-23). Klein testified at trial that Ozean Partners had "liquidated" and "ended" sometime in early 2017. (Doc. # 115 at 104:19-105:6).

Moreover, the parties stipulated that Klein was insolvent when the Longboat Key property was transferred to Ozean Partners. (Doc. # 91 at 6). Notwithstanding his insolvency and the property's value, Klein made the decision with Gieger that the property would be transferred to Ozean Partners. Specifically, Klein testified at trial that he and Gieger agreed the property "was to go into an entity for the benefit of [their] son," Peter Klein. (Doc. # 115 at 94:10-24). Klein stated "the law firm had come up with an entity [(Ozean Partners)] and a way to help [their] son. So [Klein and Gieger] agreed to it." (Id.). Klein likewise testified during the Pennsylvania action that it was agreed the property would be transferred to Ozean Partners to benefit Peter. (Doc. # 112-18 at 8-9; Doc. # 112-25 at 8:12-13).

## C. Subsequent Transactions and Ownership of the Longboat Key Property

On August 16, 2015, shortly after Ozean Partners had been formed, Ozean Partners and a realtor executed a Property Management and/or Lease Agreement, agreeing that the realtor would rent the Longboat Key property. (Doc. # 112-11). That same day, the property was listed for rent. (Doc. # 112-12). On November 16, 2015, the realtor contacted Giaccardo about a potential tenant. (Doc. # 112-15). Giaccardo testified that Klein also approached her about a potential tenant. (Doc. # 116 at 242:9-17). As of January 7, 2016, the listing was withdrawn and the property was no longer on the market. (Doc. # 112-16).

On July 15, 2017 — less than ten days before the Pennsylvania court entered judgment — Ozean Partners took out a $150,000 mortgage on the Longboat Key property in favor of Samuel Mesrie. (Doc. # 112-28). The mortgage was recorded with the Sarasota County Clerk's Office on July 20, 2017. (Id.). On September 14, 2017, a different mortgage was "recorded to correct and replace" the mortgage recorded on July 20, 2017. (Doc. # 115-42 at 1). The terms of both mortgages appear to be the same, and Klein did not know why the mortgage was rerecorded. (Doc. # 115 at 149:6-9).

Additionally, on July 18, 2017, a Florida UCC security interest listing Ozean Partners as the debtor and Mesrie as the secured party was filed on the Longboat Key property. (Doc. # 112-34). That same day, Klein executed an Affidavit of Title as the "Sole Manager(s) and/or Member(s) of Ozean Partners," which stated Ozean Partners had owned the property since May of 2014. (Doc. # 112-36). Also, on July 20, 2017, an Assignment of Leases and Rents was also recorded for the Longboat Key property, on behalf of Mesrie. (Doc. # 112-29).

Klein testified that he no longer had any ownership interest in Ozean Partners at the time of the mortgage transaction. (Doc. # 115 at 103:12-25). Yet, Klein benefited from the proceeds generated as a result of obtaining the mortgage. First, on July 20, 2017, Mesrie's counsel transferred $67,000 to Arthur T. Magrann, a physician that had previously paid some of Klein's legal bills. (Doc. # 115-41; Doc. # 115 at 146:1-17). Second, on July 21, 2017, Mesrie's counsel transferred $58,064.13 to Byrne Associates, LLC, an operating company of which Klein was the sole member. (Doc. # 115 at 144:6-145:25).

Subsequently, on August 4, 2017 — less than two weeks after the Pennsylvania court entered judgment — Ozean

Partners, through its manager John Tidrow, transferred the Longboat Key property to Klein for $10.00. (Doc. # 112-44). The quit claim deed stated Ozean Partners received "$10.00 and/or other good and valuable consideration" for the property, and Klein testified at trial that Ozean Partners received a nominal $10.00. (Id.; Doc. # 115 at 164:13-18). This was the first time Klein held title to the property, as Klein testified at trial that he "never owned the property" before the transfer. (Doc. # 115 at 130:15-16).

The same day as the transfer, Klein filed the deed as well as a homestead declaration and application with the Sarasota County Clerk. (Doc. # 112-45). In the homestead declaration, Klein declared under penalty of perjury that his "date of permanent residency" was February 20, 2007; however, Klein admitted during trial that date was wrong. (Doc. # 115 at 152:14-153:15). Specifically, Klein testified that "2007" was written by mistake and "2017" was the correct year that should have been listed for the date of permanent residency. (Id.). Tidrow, who had been residing at the property, continued to live there after the transfer. (Id. at 159:7-23, 163:6-8). Additionally, after the transfer, Tidrow paid a few property-related costs, such as condominium fees and

utilities, while Klein paid the property's mortgage to Mesrie. (Id. at 156:15-23, 162:15-163:14).

On August 22, 2017, Pasternack filed a notice of lis pendens on the Longboat Key property. (Doc. # 49). Pasternack later recorded the Pennsylvania court judgment with the Sarasota County Clerk on October 20, 2017.

### D.  <u>Klein's Residence at the Longboat Key Property</u>

Klein testified at trial that the Longboat Key property was his residence when it was transferred to Ozean Partners. (Doc. # 115 at 96:9-11). But this testimony stood in stark contrast to the representations made in the Pennsylvania action. For example, on January 9, 2016, during a deposition, Klein testified that the Longboat Key property was "not [his] residence," that he did not live at that address and never did. (Doc. # 112-17 at 2). Klein also testified that in 2015 he did not consider the Longboat Key property his residence. (Id. at 11). Additionally, on January 22, 2016, during the evidentiary hearing before the Pennsylvania court, Klein testified that prior to May of 2014, he had not been residing at the Longboat Key property for months and would only stay at the property for a few nights at most because "it was like a jail" for him and "made [him] sick." (Doc. # 112-18 at 6).

Because Klein "wasn't interested in living at that location, staying there or whatever you want to call it," his son resided at the property. (Id. at 8).

Moreover, Klein's testimony on his residency changed on other occasions as well. For example, in an unrelated case in the Eastern District of New York, Klein filed an affidavit stating he "never testified in the . . . Pennsylvania case that [he] resided anywhere except [the Longboat Key property]." (Doc. # 112-43 at ¶ 7).

Furthermore, on April 17, 2015, Klein and his then-girlfriend Karen McKeivier entered into a one-year residential lease agreement for an apartment located at 100 Central Avenue, Sarasota, Florida. (Doc. # 112-6). Klein testified he stayed at the Central Avenue property twice a week, mostly on weekends, and kept some personal belongings there. (Doc. # 115 at 170:20-171:15). Nonetheless, West testified that Klein lived with McKeivier at the Central Avenue property for a temporary time. (Doc. # 116 at 273:2-13). Additionally, the Central Avenue property was listed as Klein's address in both his answer to Frenkel's complaint in the Pennsylvania action and his 2013 and 2014 tax returns. (Doc. # 112-17 at 13; Doc. # 112-20; Doc. # 115 at 41:17-25).

12

Klein also submitted his license, voting registration, and matrimonial settlement agreement to establish his residency. However, while Klein held a Florida driver's license listing the Longboat Key property as his address, Klein testified during the Pennsylvania action that the address on his driver's license did not reflect his actual residence. (Doc. # 115 at 95:17-19). Additionally, while Klein had been registered to vote in Florida since February 20, 2007, (Doc. # 114-18), Klein's voting record displayed only two entries — one on March 15, 2016, for the Presidential Preference Primary Election, and one on November 8, 2016, for the General Election — both of which were after the 2015 transfer. (Id.). Also, the matrimonial settlement agreement stated Klein had been residing at the Longboat Key property since November of 2013, (Doc. # 113-1), but Klein testified at trial that he did not consistently live at the property during this time. (Doc. # 115 at 79:9-15).

Finally, Klein sought to establish his residency through the testimony of three witnesses. First, Abreu testified that he had often seen Klein or his vehicle at the property. (Doc. # 116 at 219:23-220:3, 223:4-11). He also stated that he could not recall a period of time over the past four years when

Klein was away from the property. (Id. at 221:9-11). But Abreu had not been in Klein's condominium unit for at least three to four years. (Id. at 221:24-222:3). Moreover, Abreu was not certain whether Klein had ever rented the unit out. (Id. at 228:22-23).

Second, Giaccardo testified that she had seen Klein or his vehicle on a weekly basis at the property. (Id. at 234:24-235:4). In fact, Giaccardo stated Klein had "a habit of sitting at the bench at the marina to watch the sunset" and had recently volunteered to be on the complex's "fining committee." (Id. at 235:4-13). Giaccardo kept records of the condominiums' ownerships and leases, and while she was not aware of any lease agreements concerning Klein, she was aware that Ozean Partners owned the unit from 2015 to August 4, 2017. (Id. at 232:12-14, 236:4-6, 241:12-17). Third, West testified that he and Klein often went to the gym together, watched weekly football games together, and ate at local restaurants together. (Id. at 257:14-21, 264:6-15).

## III. Conclusions of Law

The Court makes the following conclusions of law. To the extent that any conclusions of law might constitute findings of fact, they are adopted as such.

## A. <u>Fraudulent Transfer of Longboat Key Property</u>

The Second Amended Complaint alleges the transfer of the Longboat Key property from Gieger to Ozean Partners constituted either an actual (Count I) or constructive (Count II) fraudulent transfer under FUFTA. (Doc. # 30 at 8-10).

Judgment creditors can use FUFTA to set aside transfers or obtain other relief by establishing the transfer was either actually or constructively fraudulent. But both actual and constructive fraudulent conveyance claims require proof that the property transferred could have been used to satisfy the creditor's claim. (Doc. # 86 at 22-23); <u>see also</u> <u>In re Mathews</u>, 360 B.R. 732, 746 (Bankr. M.D. Fla. 2007) ("A debtor can only commit fraud on his creditors by disposing of such property as the creditor would have a legal right to look for satisfaction of his claim." (quoting <u>In re Kimmel</u>, 131 B.R. 223, 229 (Bankr. S.D. Fla. 1991)). A debtor's homestead, for example, is not property that can be used to satisfy a creditor's claim. <u>Havoco of Am., Ltd. v. Hill</u>, 790 So. 2d 1018, 1029 (Fla. 2001). This means FUFTA "has no effect on the constitutionally created homestead exemption." <u>Id.</u>

Therefore, the first inquiry for both FUFTA claims is whether the Longboat Key property was Klein's homestead.

### 1. **Homestead**

"The Florida Constitution protects a debtor's homestead from forced sale." <u>In re Migell</u>, 569 B.R. 918, 920 (Bankr. M.D. Fla. 2017) (citing Fla. Const., art. X, § 4). Certain requirements must be met to receive homestead protection. For starters, homestead status is only afforded to property owned by a "natural person." Fla. Const., art. X, § 4. Additionally, "[t]o qualify for Florida's homestead exemption, an individual must have an ownership interest in [the] residence." <u>In re Alexander</u>, 346 B.R. 546, 547 (Bankr. M.D. Fla. 2006). Moreover, the debtor's homestead must be established before the judgment is recorded. <u>Wechsler v. Carrington</u>, 214 F. Supp. 2d 1348, 1351-52 (S.D. Fla. 2002).

"[H]omeowners seeking to qualify for the homestead exemption must meet both an objective and subjective test. First, they must actually use and occupy the home. Second, they must express an actual intent to live permanently in the home." <u>In re Harle</u>, 422 B.R. 310, 314 (Bankr. M.D. Fla. 2010). "Where . . . an 'owner acts inconsistently with a self-professed intention to establish a homestead, a claim for exemption may fail.'" <u>In re Geiger</u>, 569 B.R. 846, 849 (Bankr. M.D. Fla. 2016) (quoting <u>In re Bratty</u>, 202 B.R. 1008, 1010

(Bankr. S.D. Fla. 1996)). "The homestead exemption should not
. . . 'be so applied as to make it an instrument of fraud or
imposition upon creditors.'" <u>FTC v. Am. Precious Metals, LLC</u>,
726 F. App'x 729, 732 (11th Cir. 2018) (quoting <u>Havoco</u>, 790
So. 2d at 1020); <u>see also</u> <u>In re Englander</u>, 95 F.3d 1028, 1031
(11th Cir. 1996) ("[T]he homestead exemption law is intended
to be a shield, not a sword . . . .").

"[T]here is little that a homeowner can do under Florida
law to lose the protection of homestead." <u>In re Bennett</u>, 395
B.R. 781, 789 (Bankr. M.D. Fla. 2008); <u>see also</u> <u>In re
Chauncey</u>, 454 F.3d 1292, 1294 (11th Cir. 2006) (holding the
debtor's "blatant[] . . . move designed to deceive her
creditors and one made in bad faith" was insufficient to find
an exception to the homestead exemption). For example, the
"transfer of nonexempt assets into an exempt homestead with
the intent to hinder, delay, or defraud creditors is not [an]
exception[] to the homestead exemption." <u>Havoco</u>, 790 So. 2d
at 1029. Accordingly, "[a] debtor's homestead exemption claim
is presumptively valid." <u>In re Migell</u>, 569 B.R. at 920
(citation omitted). And "[a]ny challenge to the homestead
exemption claim places a burden on the objecting party to
make a strong showing that the [d]ebtor is not entitled to

the claimed exemption." <u>In re Franzese</u>, 383 B.R. 197, 202-03 (Bankr. M.D. Fla. 2008).

The Longboat Key property was not Klein's homestead when Gieger transferred it to Ozean Partners. Specifically, Klein did not own the property prior to August 4, 2017. Before September of 2015, the property was owned by Gieger individually. Then, from September of 2015 until August of 2017, the Longboat Key property was owned by Ozean Partners – a limited liability company that was not entitled to claim homestead protection. <u>See</u> <u>Centennial Bank v. Noah Grp., LLC</u>, 755 F. Supp. 2d 1256, 1260 (S.D. Fla. 2010) (holding property titled in the name of a limited liability company was not entitled to homestead protection). At most, Klein owned an interest in a limited liability company that owned the property, which is insufficient under Florida law to obtain homestead protection. <u>See</u> <u>DeJesus v. A.M.J.R.K. Corp.</u>, 255 So. 3d 879, 881 (Fla. 2d DCA 2018) (holding property titled in the name of a corporation could not be the sole shareholder's homestead even though she resided there). In short, until Ozean Partners transferred title to Klein in August of 2017, the Longboat Key property could not have been Klein's homestead.

Nonetheless, the Longboat Key property was eligible to become Klein's homestead after Ozean Partners transferred the property to Klein on August 4, 2017. While the Pennsylvania court entered judgment on July 20, 2017, and Pasternack filed a notice of lis pendens on August 22, 2017, the lien against the Longboat Key property did not arise until the judgment was recorded on October 20, 2017. See In re Owen, 961 F.2d 170, 172 (11th Cir. 1992) (noting a lien established before the homestead status was acquired may be enforced against the debtor's homestead); In re Lee, 223 B.R. 594, 599-600 (Bankr. M.D. Fla. 1998) (explaining the filing of a notice of lis pendens does not create a lien on the property).

Therefore, if Klein established the Longboat Key property as his homestead after August 4, 2017, but before October 20, 2017, the property is protected from forced sale. Florida courts have not set a minimum occupancy requirement to establish a homestead. See In re Geiger, 569 B.R. at 850 ("The Court . . . is unable to locate any authority setting a minimum occupancy in order to establish the homestead exemption . . . ."). But see Id. ("[T]he Court concludes that the [d]ebtor's ten-day 'occupancy' . . . is not sufficient.").

So the fact that Klein only had a short time to establish the Longboat Key property as his homestead is not determinative.

Klein provided evidence to establish that the Longboat Key was both objectively and subjectively his homestead before the Pennsylvania judgment was recorded. First, regarding whether Klein used and occupied the Longboat Key property, multiple witnesses testified to seeing Klein at the Longboat Key property on a weekly basis. Furthermore, Pasternack failed to point to another location besides the Longboat Key property where Klein actually resided after the transfer from Ozean to Klein. See In re Franzese, 383 B.R. at 202-03 (noting the burden is on the party objecting to a debtor's homestead). Second, regarding Klein's intent, while not dispositive, Klein's driver's license, voter registration, and voting practices are afforded some weight. See In re Morad, 323 B.R. 818, 824-25 (B.A.P. 1st Cir. 2005) (noting a debtor's voter registration and voting practices are relevant factors). Furthermore, Klein has continued to pay the mortgage on the Longboat Key property since September of 2017.

As pointed out by Pasternack, Klein's homestead declaration contained some misstatements. But these

misstatements do not render the recording of the homestead declaration completely irrelevant. Further, even if the Court set aside the homestead declaration because of the falsities it contained, there still remains ample evidence demonstrating that Klein established the property as his homestead between August 4 and October 20, 2017. More importantly, Pasternack failed to offer evidence establishing that the property was not Klein's homestead before October 20, 2017, and therefore, failed to satisfy her burden.

Under the totality of the circumstances, the Court concludes Klein established the Longboat Key property as his homestead before the Pennsylvania judgment was recorded. Even if Klein established the Longboat Key property as his homestead with the specific intent to protect it from forced sale, "Florida courts have consistently held that the homestead exemption . . . must be liberally construed." Butterworth v. Caggiano, 605 So. 2d 56, 58 (Fla. 1992); see also In re Prestwood, 322 B.R. 463, 469 (Bankr. S.D. Fla. 2005) ("Exceptions to the homestead exemption should be strictly construed in favor of claimants and against challengers.").

Notwithstanding the Longboat Key property's current homestead status, the property was not Klein's homestead at the time of the transfer from Gieger to Ozean Partners, and therefore, was property subject to payment of the debt due.

## 2. **Actual Fraud**

A transfer is actually fraudulent under Section 726.105, Florida Statutes, if made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." Fla. Stat. § 726.105(1)(a). In analyzing a debtor's actual intent, courts "look to indicia of intent commonly known as 'badges of fraud.'" Nat'l Mar. Servs., Inc. v. Straub, 979 F. Supp. 2d 1322, 1328 (S.D. Fla. 2013) (quoting Amjad Munim, M.D., P.A. v. Azar, 648 So. 2d 145, 152 (Fla. 4th DCA 1994)). These badges of fraud include:

> whether the transfer was to an insider, whether the debtor retained possession or control of the property transferred after the transfer, whether the transfer or obligation was disclosed or concealed, whether before the transfer was made the debtor had been sued or threatened with suit, whether the transfer was of substantially all the debtor's assets, whether the debtor absconded, whether the debtor removed or concealed assets, whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred, whether the debtor was insolvent or became insolvent shortly after the transfer, whether the transfer occurred shortly before or after a substantial debt was incurred, and whether the debtor transferred the essential

22

assets of the business to a lienor who transferred them to an insider of the debtor.

Id. This list is not exhaustive, and no badge alone is dispositive. Wiand v. Lee, 753 F.3d 1194, 1200 (11th Cir. 2014). Nonetheless, evidence of multiple badges of fraud creates "a prima facie case and raise[s] a rebuttable presumption that the transaction is void." Straub, 979 F. Supp. 2d at 1328.

In this case, several badges of fraud are present. First, the transfer was made to an insider. Specifically, even though Klein was entitled to the Longboat Key property under the matrimonial settlement agreement, Gieger transferred the property to Ozean Partners – a company formed a little over a month before the transfer with Klein as the sole managing member. See Wells Fargo Bank, N.A. v. Barber, 85 F. Supp. 3d 1308, 1318 (M.D. Fla. 2015) (noting defendant's transfer to a limited liability company that she was the sole member of was a transfer to an insider); see also Fla. Stat. § 726.102(8) (defining "insider" to include "[a] partnership in which the debtor is a general partner" and "[a] corporation of which the debtor is a director, officer, or person in control").

Second, before the transfer to Ozean Partners, Frenkel had been attempting to collect on the promissory notes and initiated the Pennsylvania action against Klein. In fact, Frenkel had obtained a default judgment against Klein in the Pennsylvania action before the transfer. Third, the amount received for the Longboat Key property was not reasonably equivalent to the value of the property. According to the matrimonial settlement agreement, the Longboat Key property had a fair market value of $550,000, yet the property was transferred to Ozean Partners for a nominal $10.00. Fourth, the Longboat Key property, which Klein was entitled to under the matrimonial settlement agreement, was substantially all of Klein's assets because Klein was insolvent when the property was transferred to Ozean Partners.

In sum, the transfer of the Longboat Key property from Gieger to Ozean Partners constituted an actual fraudulent transfer.

### 3. <u>Constructive Fraud</u>

A transfer is constructively fraudulent under Section 726.106, Florida Statutes, if: (1) the creditor's claim arose before the transfer; (2) the debtor was insolvent at the time of the transfer or became insolvent because of the transfer;

and (3) the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer. Fla. Stat. § 726.106(1); RREF SNV-FL SSL, LLC v. Shamrock Storage, LLC, 250 So. 3d 788, 789-90 (Fla. 1st DCA 2018) (per curiam). Unlike actual fraud, claims for constructive fraud do not require proof of fraudulent intent. Gen. Trading v. Yale Materials Handling Corp., 119 F.3d 1485, 1499 (11th Cir. 1997).

The transfer of the Longboat Key property from Gieger to Ozean Partners was constructively fraudulent. First, Frenkel was a creditor of Klein at the time of the 2015 transfer because a default judgment had been entered against Klein a year beforehand on August 11, 2014. (Doc. # 114-1 at 18). Second, the parties stipulated that Klein was insolvent when the Longboat Key property was transferred from Gieger to Ozean Partners. (Doc. # 91 at 6).

Third and finally, the transfer was not made for a reasonably equivalent value. "The determination of reasonably equivalent value should be made on a case by case basis." In re Clarkston, 387 B.R. 882, 888 (Bankr. S.D. Fla. 2008). In cases where the transfer's benefits to the debtor are indirect, courts consider "the good faith of the parties, the

disparity between the fair value of the property [transferred from the debtor to a third party] and what the debtor actually received, and whether the transaction was at arm's length." In re Caribbean Fuels Am., Inc., 688 F. App'x 890, 895 n.3 (11th Cir. 2017) (quoting In re Leneve, 341 B.R. 53, 57 (Bankr. S.D. Fla. 2006)). Here, there was a significant disparity between the fair market value of the property and the nominal amount given by Ozean Partners in exchange. Additionally, it was not an arm's-length transaction because the transaction was between Ozean Partners, which was controlled by Klein, and Gieger, Klein's ex-wife. Furthermore, the matrimonial settlement agreement stated Gieger was to transfer the property to Klein, yet Gieger instead transferred it to Ozean Partners for a nominal sum, which calls into question the good faith of the parties.

In sum, the transfer of the Longboat Key property from Gieger to Ozean Partners constituted a constructive fraudulent transfer.

### B.   Remedies for Fraudulent Transfer

FUFTA provides creditors with a variety of remedies for fraudulent transfers. Under Section 726.108, Florida Statutes, these remedies include avoidance of the transfer,

26

attachment, an injunction, appointment of a receiver, and "[a]ny other relief the circumstances may require." Fla. Stat. § 726.108(1). Some Florida courts have interpreted FUFTA's catchall provision permitting "any other relief" to authorize money damages "against both fraudulent transferor[s] and transferee[s], jointly and severally." McCalla v. E. C. Kenyon Constr. Co., 183 So. 3d 1192, 1194 (Fla. 1st DCA 2016); see also Hansard Constr. Corp. v. Rite Aid of Fla., Inc., 783 So. 2d 307, 308 (Fla. 4th DCA 2001) (holding FUFTA's "catchall provision [is] sufficiently broad to encompass [a] monetary judgment").

Section 726.109, Florida Statutes, provides "to the extent a transfer is voidable in an action by a creditor under [Section] 726.108(1)(a), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (3), or the amount necessary to satisfy the creditor's claim, whichever is less." Fla. Stat. § 726.109(2). "The judgment may be entered against . . . [t]he first transferee of the asset or the person for whose benefit the transfer was made." Id. Also, like the catchall provision in Section 726.108(1), courts have interpreted Section 726.109(2) to permit money judgments as well. Dowling v.

<u>Davis</u>, 295 F. App'x 322, 323 (11th Cir. 2008) (per curiam);
<u>Myers v. Brook</u>, 708 So. 2d 607, 610 n.1 (Fla. 2d DCA 1998).

"[T]he condition precedent in [Section 726.109(2)] is that the transfer be *voidable* . . . ." <u>Davis</u>, 295 F. App'x at 323. Therefore, a creditor may recover money damages if the transfer could have been avoided at the time of the transfer, even if the transfer was not actually avoided. <u>Id.</u>; <u>see also</u> <u>In re Champalanne</u>, 425 B.R. 707, 713 (Bankr. S.D. Fla. 2010) ("Although the Trustee cannot impose an equitable lien or trust against the [debtor's homestead], the series of transfers that culminated in the purchase of the [debtor's homestead] may nevertheless result in a judgment against the transferees involved.").

Read together, Sections 726.108 and 726.109 permit creditors seeking relief under FUFTA to choose their remedies. <u>In re Davis</u>, 403 B.R. 914, 920 (Bankr. M.D. Fla. 2009). A creditor may choose "either to avoid a transfer and seek recovery against the asset fraudulently transferred, or to receive a money judgment against the transferee [or the person for whose benefit the transfer was made] based on the lesser of the value of the asset or the amount of the creditor's claim." <u>Id.</u> If equitable relief is unavailable

28

because of the defendant's wrongdoing, courts may award money damages instead. <u>See</u> <u>Winn & Lovett Grocery Co. v. Saffold Bros. Produce Co.</u>, 164 So. 681, 683 (Fla. 1935) (holding a fraudulent transferee liable for money damages because the transferee made the asset "impracticable or impossible to reach," which prevented avoidance of the transfer).

The transfer of the Longboat Key property from Gieger to Ozean Partners was both actually and constructively fraudulent. Frenkel's estate "demands to attach and levy upon [Klein's] interest in the [Longboat Key property] to which [Ozean Partners] fraudulently holds legal title and such further and additional relief this Court deems just and proper." (Doc. # 30 at 9-10). But Ozean Partners no longer holds title to the property. And even if the Court were to set aside the transfer from Gieger to Ozean Partners, Frenkel's estate would not be permitted to pursue the Longboat Key property because it is now Klein's homestead. As a result, the only remedy available for Frenkel's estate is to recover money damages.

As the transferee of the fraudulently transferred property, Ozean Partners may be liable for money damages under Section 726.109. Likewise, as the person for whose benefit

the fraudulent transfer was made, Klein may be liable for money damages under Section 726.109 as well.

Florida courts have held that "[a] fraudulent conveyance action . . . is not an action against a debtor for failure to pay an amount owing from a prior judgment." <u>Yusem v. S. Fla. Water Mgmt. Dist.</u>, 770 So. 2d 746, 749 (Fla. 4th DCA 2000). In other words, a creditor that has a judgment against a debtor cannot obtain an additional money judgment against the same debtor simply because that debtor fraudulently transferred assets to avoid the creditor. Here, Klein is already Frenkel's judgment debtor. Therefore, Frenkel's estate cannot obtain an additional money judgment against Klein merely because the Longboat Key property was fraudulently transferred to prevent Frenkel from using the property to satisfy his claim. While a money judgment cannot be entered, Klein still violated FUFTA, and therefore, a nonmonetary judgment can be entered in favor of Frenkel's estate and against Klein. <u>See</u> <u>Branch Banking & Trust Co. v. Hamilton Greens, LLC</u>, No. 11-80507-CIV-MARRA/MATTHEWMAN, 2016 U.S. Dist. LEXIS 77087, at *67-69, 72-73 (S.D. Fla. Jan. 13, 2016) (holding a nonmonetary judgment could be entered against a judgment debtor, even though a monetary judgment

could not), report and recommendation adopted, 2016 U.S. Dist. LEXIS 77086 (June 14, 2016).

With respect to Ozean Partners, Frenkel's estate can recover the lesser of the value of the Longboat Key property or the amount necessary to satisfy its claim. Fla. Stat. § 726.109(2). No evidence showing that the value of the Longboat Key property has changed since 2015 has been presented. So, assuming the fair market value of the Longboat Key property has not changed since the 2015 transfer, the value of the property is $550,000. Judgment in the Pennsylvania action was entered in the amount of $318,744.01, plus $62.88 in post-judgment interest per day, beginning on July 25, 2017, and continuing until judgment is paid. (Doc. # 113-5 at 1). Thus, because Frenkel's claim is less than the value of the property, a money judgment of $318,744.01, plus $62.88 in post-judgment interest per day accruing since July 25, 2017, can be entered in favor of Frenkel's estate and against Ozean Partners.

### C.   Directed Verdict

At the close of Pasternack's case, Pasternack moved for directed verdict. Pasternack argued Klein was not entitled to claim the Longboat Key property as his homestead because

Tidrow continued to reside at the property with Klein after the 2017 transfer. (Doc. # 115 at 183:24-186-9). However, Pasternack failed to offer any case law to support the assertion that having a roommate defeats a debtor's homestead claim. Klein holds title to the Longboat Key property, and Tidrow is paying a few property-related bills. Once a debtor establishes property as his homestead, the homestead status is not lost merely by temporarily renting the property to another. In re Lloyd, 394 B.R. 605, 611 (Bankr. S.D. Fla 2008); Collins v. Collins, 150 Fla. 374, 377 (Fla. 1942).

Pasternack also argued Klein should not be entitled to claim the Longboat Key property as his homestead because Klein made a false statement on his homestead declaration. (Doc. # 115 at 186:10-188:11). But the Court need give no consideration to the homestead declaration to reach the conclusion that the property was Klein's homestead. Additionally, Pasternack failed to offer any case law to support the assertion that making a misstatement on a homestead declaration defeats a debtor's homestead claim. Pasternack's motion for directed verdict is therefore denied.

## IV. Conclusion

The transfer of the Longboat Key property on September 19, 2015, from Gieger to Ozean Partners was both actually and constructively fraudulent. Klein subsequently established the Longboat Key property as his homestead before the Pennsylvania judgment was recorded. Therefore, the property is not subject to attachment and levy.

The transfer from Gieger to Ozean Partners was still voidable as a fraudulent transfer. As a result, while a money judgment cannot be entered against Klein because he is already Frenkel's judgment debtor, a money judgment can be entered against Ozean Partners. Because the amount of Frenkel's claim is less than the value of the Longboat Key property, Ozean Partners is liable for $318,744.01, plus post-judgment interest.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) The Motion for Directed Verdict (Doc. # 108) is **DENIED**.

(2) The Clerk is directed to enter judgment in favor of Plaintiff Alla Pasternack, executrix of Plaintiff Leon Frenkel's estate, and against Defendants Bruce Klein and

Ozean Partners, LLC on Counts I and II of the Second
Amended Complaint.

(3) Pasternack shall recover from Ozean Partners the amount
of $318,744.01, plus $62.88 in post-judgment interest
per day, beginning on July 25, 2017, and continuing until
judgment is paid.

(4) Pasternack has thirty days from the date of this Order
to file any motions for attorney's fees, costs, and
prejudgment interest.

(5) The Clerk is directed to **CLOSE** this case. The closing of
this case will not affect the Court's ability to hear
and determine any motions for attorney's fees and costs
and other post-trial motions.

**DONE** and **ORDERED** in Tampa, Florida, this <u>25th</u> day of
January, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE